UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DARRYL BURKE,

    *Plaintiff*,

  v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

    *Defendant.*

Civil Action No. 16-1595 (RDM)

### MEMORANDUM OPINION

Plaintiff Darryl Burke, proceeding *pro se*, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the U.S. Department of Homeland Security. Burke alleges that he served a FOIA request dated October 26, 2014, on the Transportation Security Agency ("TSA"), a Department component, and that the TSA has "failed to respond" to that request. Dkt. 1 at 2 (Compl. ¶¶ 4–5). The Department contends that the TSA did not receive Burke's FOIA request until June 6, 2016, nearly two years later. Ultimately, however, the Department did conduct a search for records, and it represents that it was unable to locate any responsive records. On that basis, the Department contends that it has done all that FOIA requires of it.

The matter is now before the Court on the Department's motion to dismiss or, in the alternative, for summary judgment. Dkt. 11. Burke has failed to respond to that motion despite receiving warnings from the Court, Dkt. 13, and the Department, Dkt. 11 at 1–2, that the Court "will accept as true any factual assertion supported by the affidavits (or declarations) or other documentary evidence submitted with the [Department's] motion, unless the plaintiff submits his

. . . own" controverting evidence, Dkt. 13 at 2. *See also* Minute Order (Jan. 6, 2017) (absent a timely opposition, the Court "may consider only defendant's arguments"). Although the Court must still consider the legal merits of the Department's defense, *see Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507–08 (D.C. Cir. 2016), Burke's failure to respond to the Department's evidence leaves the Court with an undisputed factual record.

Against this backdrop, and for the reasons explained below, the Court concludes that the Department is entitled to summary judgment. The Court will, accordingly, grant the Department's motion.

## I. BACKGROUND

Darryl Burke is an inmate at a federal corrections facility in South Carolina. Dkt. 1 at 1 (Compl. ¶ 2). This is one of three FOIA cases filed by Burke pending before the Court. *See also Burke v. U.S. Dep't of Justice*, No. 16-cv-2082-RDM (filed Oct. 20, 2016); *Burke v. U.S. Dep't of Homeland Security*, No. 16-cv-1670-RDM (filed Aug. 17, 2016). Because the declaration submitted in support of the Department's motion for summary judgment is uncontroverted, the Court will accept the facts set forth in that declaration as admitted for purposes of resolving the Department's motion. *See* Fed. R. Civ. P. 56(e)(2); LCvR 7(h)(1); *see also Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002).

In his complaint, Burke alleges that "[b]y Freedom of Information Act Request dated 10/26/2014, [he] requested that the . . . TSA[] provide him with a copy of all agency records pertaining to" either him or his wife, Vicki Garland, and that the TSA has not responded to that request. Dkt. 1 at 2 (Compl. ¶¶ 4–5). Notably, Burke does not allege that he actually sent the FOIA request to the TSA on October 26, 2014, or that it was received on that day, but only that the request is "dated" October 26, 2014. Although it is unclear whether Burke intends to

distinguish between the date indicated on the face of the FOIA request and the date it was actually sent to, or received by, the TSA, the Department perceives precisely that distinction. According to the uncontroverted declaration of Teri Miller, the operations manager for the TSA's FOIA Branch, the FOIA Branch did not receive a request for records from Burke until June 6, 2016. Dkt. 11-1 at 2 (Miller Decl. ¶ 6).

That request did not take the usual form, but rather included a copy of the complaint that was subsequently filed in this matter, with three attachments: a FOIA request dated October 26, 2014; a second request dated September 23, 2015; and a subpoena to produce documents in a bankruptcy proceeding dated February 17, 2016. *Id.* at 2–4 (Miller Decl. ¶¶ 6–10); *see also* Dkt. 11-2 (attaching these documents). As Miller explains, TSA's "FOIA Branch does not have a record of ever having received [Burke's] purported October 2014 Request or [his] September 2015 Request, other than what was attached to [the] June 2016 Request." Dkt. 11-1 at 4 (Miller Decl. ¶ 12).

The three documents attached to Burke's June 6, 2016, submission all sought certain TSA records (including video records) relating to travel in July 2009 by Burke (using the names "Darryl Burke," "Jeffery Burke," "Jeffrey Burke") or his son, Lorin Burke. *Id.* at 3–4 (Miller Decl. ¶¶ 8–10). None of these documents—including the FOIA request dated October 26, 2014, which forms the gravamen of Burke's current complaint—refer to Burke's wife, Vicki Garland. Along with his June 6, 2016, request to the TSA, however, Burke submitted seven pages of materials relating to FOIA requests either submitted or purportedly submitted to the agency by Vicki Garland. *Id.* at 5 (Miller Decl. ¶ 13). Some of those materials relate to a 2015 FOIA request in which Garland sought certain TSA records (including video records) relating to her or her son, Lorin Burke. Darryl Burke's own submission to the TSA includes the TSA's response

to Garland's FOIA request informing Garland that "no records responsive to [her] request" were located. *Id.* (Miller Decl. ¶ 14); *see also* Dkt. 11-3 at 1. Other portions of the materials included an unsigned, putative FOIA request from Garland dated October 26, 2014, and a copy of a second subpoena from the bankruptcy court proceeding seeking certain travel records for Garland. Dkt. 11-1 at 5 (Miller Decl. ¶¶ 15–16); *see also* Dkt. 11-3 at 2–4.

Despite its unusual format, the TSA treated Burke's submission as a FOIA request. Dkt. 11-1 at 2 (Miller Decl. ¶ 6). In response to that request, TSA's FOIA Branch searched for "any TSA travel or passenger records pertaining to . . . Darryl Burke and his son, Lorin Burke, for the time period of July 1 through 31, 2009." *Id.* at 7 (Miller Decl. ¶ 19). As explained in the Miller declaration, at the relevant time, the TSA did "not maintain a centralized repository of all flight information, all passengers' travel information, or all passengers' movement through airport security screening," nor did it "generally maintain printouts or paper records of all passengers' travel information." *Id.* at 7 (Miller Decl. ¶ 20). Rather, "the only centralized repository" that might have contained "information about a particular passenger's travel" was the TSA's Performance Results Information System ("PARIS"), which includes information relating to "regulatory investigations, security incidents, and enforcement actions" and records "the details of security incidents involving passenger and property screening." *Id.* The FOIA Branch, accordingly, requested that the TSA's Office of Security Operations ("OSO") search the PARIS database "for all TSA records . . . on Darryl Burke or Lorin Burke for their travel during July of 2009." *Id*. at 7–8 (Miller Decl. ¶ 20).

That search did not yield any responsive records, and the FOIA Branch notified Burke that "it located no records responsive to his request." *Id.* at 8 (Miller Decl. ¶¶ 21–22). Although the Department now asserts that its search encompassed records on both Burke and his son,

4

Lorin Burke, *see id.* at 7–8 (Miller Decl. ¶¶ 19–21), the TSA's letter to Burke merely reported that the agency had searched for records "maintained on [him]" during the relevant period, *see* Dkt. 11-5 (TSA "no records" response).

Burke filed an administrative appeal of that determination, arguing that the TSA had failed to search for records using Burke's alias—Jeffery Burke—and for records regarding his son, Lorin Burke, or his wife, Vicki Garland. Dkt. 11-6. In response, the TSA's FOIA Branch requested OSO to search the PARIS database "for records pertaining to Darryl Burke, Jeffrey D. Burke, Jeffery D. Burke, and Lorin Burke." Dkt. 11-1 at 8–9 (Miller Decl. ¶ 24). In addition, the FOIA Branch asked the airports that Burke "indicated he [might] have traveled through" to search for these same names. *Id.* (Miller Decl. ¶ 24).

Again, OSO located no responsive records and, after searching their "local electronic databases most likely to contain records responsive to [Burke's] request," the airports also failed to locate any responsive records. *Id.* at 9 (Miller Decl. ¶ 25). On this basis, the TSA's Assistant Administrator for Civil Rights & Liberties, Ombudsman and Traveler Engagement "affirm[ed] the search conducted by TSA." Dkt. 11-7. Unlike the TSA's earlier letter, this correspondence clarified that the agency understood Burke's request to seek records on both himself and his son Lorin. *Id.* The correspondence explained that it was unsurprising that the TSA's search failed to locate any responsive records because, "[i]n order to protect traveler[s'] privacy, [the] TSA generally only retains flight reservation information for seven days following completion of the flight." *Id.* Potentially responsive video footage, moreover, "is controlled by the airport authorit[ies] and [is] generally deleted after 30 days." *Id.*

In responding to Burke's appeal, the TSA also concluded that, in the agency's view, Burke's "original request letter did not include a request for records pertaining to [his] wife, so a

5

search was not conducted for records as to her." *Id.* The TSA nonetheless decided to treat Burke's submissions as a new FOIA request for records pertaining to Garland's travel during the relevant period of time and to "conduct a search accordingly." *Id.* In processing that request, however, the TSA—once again—found no responsive records. Dkt. 11-1 at 9 (Miller Decl. ¶ 27). As explained in the Miller declaration, the TSA had already searched the PARIS database in response to Garland's August 2015 request and had found no responsive records. *Id.* at 8 (Miller Decl. ¶ 20 n.3). Following the agency's decision to treat Burke's submission as a request for records relating to Garland's travel, the TSA took the additional step of requesting that the relevant airports "search for any travel records, video recordings, or flight information during July of 2009 pertaining to 'Vicki Garland.'" *Id.* at 9 (Miller Decl. ¶ 27). That search also failed to identify any responsive records. *Id.* (Miller Decl. ¶ 27). The TSA, accordingly, issued a further "no records" response to Burke. Dkt. 11-8.

Dissatisfied with the TSA's responses, Burke filed this action. Dkt. 1. In lieu of answering the complaint, the Department moved to dismiss or, in the alternative, for summary judgment, arguing that the TSA conducted an adequate search and located no responsive agency records. Dkt. 11. Because Burke is proceeding *pro se*, the Court alerted him to the consequences of failing to respond to the Department's motion. Dkt. 13 (citing Fed. R. Civ. P. 56(e); *Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992); *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988)). The Court also granted Burke a thirty-day extension of time to file his opposition. Minute Order (Jan. 6, 2017). Over six months have now passed since that extended deadline, and Burke has failed to file a brief or any evidence in opposition to the Department's motion. As the Court previously cautioned, *see id.*, it will now proceed to decide the Department's motion without the benefit of Burke's input.

## II. LEGAL FRAMEWORK

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56. *See, e.g.*, *Tracy v. U.S. Dep't of Justice*, 191 F. Supp. 3d 83 (D.D.C. 2016). To prevail on a summary judgment motion, the moving party must demonstrate that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Ordinarily, the Court views the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But where, as here, the nonmoving party does not respond to an assertion of fact, the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). In all circumstances, however, the Court must decide independently whether "the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP*, 843 F.3d at 507.

## III. ANALYSIS

The standard for granting summary judgment in a FOIA case is "well established." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). An agency is entitled to summary judgment if it can show that it has conducted a search "reasonably calculated to uncover all relevant documents" and has released all non-exempt, non-excluded records identified by that search. *Id.* (internal quotation marks omitted). To demonstrate the adequacy of its search, the agency "may rely upon reasonably detailed, nonconclusory affidavits," *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched," *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). Significantly, "the adequacy of a search is 'determined not by the

7

fruits of the search, but by the appropriateness of [its] methods.'" *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) (alteration in original) (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)).

As described at length in the Miller declaration—which is uncontroverted due to Burke's failure to respond—the TSA's "efforts were adequate and its methods well-tailored to [Burke's] request." *Edelman v. SEC*, 172 F. Supp. 3d 133, 145–46 (D.D.C. 2016). To begin, "[t]here is no requirement that an agency search every record system." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Here, the "only office within TSA that . . . was likely to maintain the records that [Burke] requested," Dkt. 11-1 at 10 (Miller Decl. ¶ 28), repeatedly searched its PARIS database, "the only centralized repository" for "information about a particular passenger's travel" at the relevant time, *id.* at 7 (Miller Decl. ¶ 20). Those searches identified no responsive records. *Id.* at 8 (Miller Decl. ¶ 21). That result, moreover, was unsurprising. As the Miller declaration explains, Dkt. 11-1 at 7, 10 (Miller Decl. ¶¶ 20 & n.2, 29), and as the TSA informed Burke in responding to his FOIA request, Dkt. 11-7, the "TSA generally only retains flight reservation information for seven days following completion of the flight," *id.* "To the extent that [the] TSA maintains information about a particular passenger's travel" from the relevant time period (July 2009), "the only centralized repository" is the PARIS database, which the agency did, in fact, search. Dkt. 11-1 at 7 (Miller Decl. ¶ 20).

To be sure, the TSA did not initially search for records referring to Vicki Garland and, following Burke's appeal, the agency merely requested that the potentially relevant airports search their records and did not search the PARIS database. But, as the Miller declaration explains, there was no need at that time to search the PARIS database. *Id.* at 8, 9–10 (Miller Decl. ¶¶ 20 n.3, 27). As reflected in the declaration and supporting documents, *see id.*; Dkt. 11-3

8

at 1, Garland submitted a separate request for the same records in 2015, and at that time "the FOIA Branch tasked OSO to search [the] PARIS [database] for any records relating to . . . Garland's . . . travel in July of 2009." Dkt. 11-1 at 8 (Miller Decl. ¶ 20 n.3). OSO, in turn, "found no records responsive to . . . Garland's request." *Id.*; *see also* Dkt. 11-3 at 1 (TSA "no records" response to Garland FOIA request). Because Burke's request sought precisely the same records relating to Garland's July 2009 travel, and because Burke has failed to offer any reason to believe that a subsequent search would have located any records, the Court concludes that the TSA's search for records relating to Garland was adequate.

Finally, it bears emphasis that the TSA did not merely search its own files but also requested that certain airports search for responsive records. As explained in the Miller declaration, those airports searched their "electronic databases most likely to contain" responsive records and found none. Dkt. 11-1 at 9 (Miller Decl. ¶ 25); *see also id*. at 9–10 (Miller Decl. ¶ 27). Airport video recordings, moreover, are "controlled by the airport authority and [are] generally deleted after 30 days." *Id.* at 9 (Miller Decl. ¶ 26).

On the present record, it is unclear whether any video recordings that the local airports might have created would constitute TSA "agency records" for purposes of FOIA. As the Supreme Court has explained, two requirements "must be satisfied for requested materials to qualify as 'agency records'"—the agency must "either create or obtain the requested materials," and "the agency must be in control of the requested materials at the time the FOIA request is made." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45 (1989) (citations and internal quotation marks omitted). Typically, the D.C. Circuit looks "to four factors to determine whether an agency has sufficient control over a document to make it an 'agency record.'" *ACLU v. CIA*, 823 F.3d 655, 662 (D.C. Cir. 2016). Those factors are:

9

> [1] the intent of the document's creator to retain or relinquish control over the records; [2] the ability of the agency to use and dispose of the record as it sees fit; [3] the extent to which agency personnel have read or relied upon the document; and [4] the degree to which the document was integrated into the agency's record system or files.

*Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 218 (D.C. Cir. 2013) (alteration in original) (citation omitted).

Here, the Departure gestures at the contention that airport video recordings do not constitute TSA "agency records," but it does not fully develop that defense. Miller declares, for example, that video footage "is controlled by the airport authorit[ies]" and "do[es] not become [a] TSA record[] unless TSA requests and receives footage from the airport authority" for a specific "time, place [or] incident." Dkt. 11-1 at 10 (Miller Decl. ¶ 30); *see also* Dkt. 11 at 16 (Motion To Dismiss or, in the Alternative, For Summary Judgment). The Department, however, does not brief how the four-factor test applies in this context, nor does the record provide the Court with sufficient detail to draw conclusions for itself. Similarly, the evidence does not disclose whether the airport authorities "created" any surveillance video on behalf of the TSA.

For two reasons, however, the Court need not rest its decision on this ground. First, the Miller declaration represents (1) that the TSA "tasked" the airports with searching for both travel records and "video recordings" and (2) that the airports did, in fact, search "their local electronic databases most likely to contain records responsive to the taskings." Dkt. 11-1 at 9 (Miller Decl. ¶ 27); *see also id.* (Miller Decl. ¶ 25). Second, the evidence also shows (1) that airports typically delete "all [surveillance] video" in their control "after 30 days," *id.* at 9–10 (Miller Decl. ¶¶ 26, 30), and (2) that the TSA did not receive Burke's FOIA request until June 6, 2016, *id.* at 4 (Miller Decl. ¶ 12), or Garland's request until August 26, 2015, *id.* at 6 (Miller Decl. ¶ 17)—both *many years* after any video footage of their July 2009 travel might have been created and, then,

deleted pursuant to this practice. Burke, moreover, has failed to respond to any of this. He has not argued, for example, that there is any reason to doubt that the airports searched for relevant video recordings or that any such footage was deleted long ago. As a result, the Court must treat the Department's factual assertions as admitted. Under these circumstances, the Court concludes that—even if airport video recordings might qualify as "agency records" of the TSA—the agency conducted an adequate search that was "reasonably calculated to discover the requested [materials]." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

As the D.C. Circuit put it, "[an] agency is not obligated, nor is it able, to disclose a record it does not have." *DeBrew v. Atwood*, 792 F.3d 118, 123 (D.C. Cir. 2015). The TSA conducted a diligent search for responsive records and found none. That is all that the law requires.

## CONCLUSION

The Court will, accordingly, grant the Department's motion for summary judgment, Dkt. 11.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: August 8, 2017